consular certificate with their invoice. The defendant exacted duties upon the paper valuation, and that amount was paid, April 17th, 1851, under the following protest: "We hereby protest against the payment of duties on the foregoing entry calculated at paper florins, claiming the true value is expressed in the invoice in silver florins, and we pay the excess ·of duties to get possession of the goods." It was proved on the trial, by a witness acquainted with the Austrian currency, that the paper currency in Austria, on the 23d of January, 1851, exceeded the specie value 24 per cent. The entry by the Antoinette Maria was directly within the principle recognized by this court in recent cases, and the plaintiffs are entitled to recover the excess of duties paid on that importation, with interest from the time of payment. To bring the importation by the Smyrna within the same rules, it must appear that the entry or payment was made under circumstances giving the plaintiffs the advantage of the consular certificate which accompanied the previous invoice and entry. It is to be observed that, although the two entries were not exactly coincident in time, yet the interval between them was not much over one month, and, the protests having relation to importations from the same port, and the consular certificate from that port having been presented without avail in the first case, it may fairly be presumed that the collector acted, as to the second entry, with full knowledge of that certificate, and refused to allow the plaintiffs the benefit of it. Moreover, it was proved before the jury that it is a common occurrence, in making entries at the custom house, when a consular certificate accompanies an invoice of Austrian goods, for the collector to tear it off and give it back to the importer as useless, as, under the instructions of the treasury department, he regards the value of the Austrian florin as being fixed by statute at 48½ cents, and takes no notice of evidence proving a depreciation below that. I think that, upon this evidence, the jury would have been well warranted in finding that the duties were, in the case of the Smyrna, exacted by the collector upon the paper value of the goods, with knowledge of the consular certificate which accompanied the importation immediately preceding, and with a full understanding between him and the plaintiffs that they would not be allowed a deduction from the paper valuation stated in the entry, upon that or any other description of proof.

The verdict being taken for the plaintiffs by consent of parties, subject to the opinion of the court upon the law of the case, I shall hold, upon the evidence, that the collector was bound to have taken cognizance under the protest in this case, of the consular certificate on file with the previous importation, and to have demanded a bond for the production of a later one, if that was not satisfactory as to the true rate of depreciation at the time of the purchase. The plaintiffs proved the depreciation of the paper florin to have been 24 per cent. at Trieste at the date of the invoice, but, in my opinion, the collector is only chargeable with the rate certified by the consul. The plaintiffs are, therefore, entitled to recover, with interest, the duties paid on the difference between ·the paper and silver value of the invoice and entry rated at 23 per cent., and also costs of suit.

---

## Case No. 11,732.

REYNOLDS v. NATIONAL EXP. & TRANSP. CO.  .

[Cited in Glenn v. Macon, 32 Fed. 7. Nowhere reported; opinion not now accessible.]

---

## Case No. 11,733.

REYNOLDS et al. v. The SIMOON.

[N. Y. Times, June 14, 1863.]

District Court. S. D. New York.  1863.

ADMIRALTY—SUIT FOR WAGES — FOREIGN VESSEL —ASSENT OF FOREIGN CONSUL.— SHIPPING ARTICLES—DEPRECIATED CURRENCY.

[1. A district court will exercise jurisdiction of a suit by a foreign seaman against a foreign vessel for wages when the consul of the sovereign of both parties certifies his approbation and consent.]

[2. Shipping articles for a voyage to certain ports, and back to a final port of discharge, in the United Kingdom, are violated by accepting a cargo at the last of said ports for Valparaiso.]

[3. Foreign seamen who abandon their vessel in a United States port, upon a strict construction of their contract, can recover only the value of their contract converted into legal currency of the United States, disregarding any depreciation thereof.]

[This was a libel for seamen's wages by John Reynolds and others, British subjects, against the British bark Simoon, filed with the assent of the British consul.]

Mr. Edwards, for libelants.

Beebe, Dean & Donohue, for respondents.

Before BETTS, District Judge.

This was a libel for seamen's wages. The libel alleged that on May 3, 1862, the libelants shipped on board the British bark Simoon, at Liverpool, for a voyage "to Madras, thence if required to any ports or places in the Indian, Pacific and Atlantic Oceans and China and Eastern Seas, (thence to a port for orders and to the continent of Europe if required,) and back to a final port of discharge in the United Kingdom, the term not to exceed three years;" that the vessel went to Madras. thence to Manilla, thence to St. Helena, for orders, where she was ordered to New York, and arrived here on April 28, 1863; that the vessel discharged her cargo, and then took in a cargo for Valparaiso, whither she was about to sail instead of going to a port in the United Kingdom; that the contract was, therefore, broken, and the